LAND, Justice.
 

 On March 30,1939, Highland Realty Company agreed to sell, and defendant, Henry L. Feraud, agreed to purchase, for a cash consideration of $26,250, the following de-' scribed real estate: “A certain portion or tract of land
 
 triangular in shape,
 
 located in the City of New Orleans, Louisiana, situated on the west side of Elysian Fields Avenue, and north of Gentilly Road as shown on a survey of B. J. Oliveire, C. E., dated May 28, 1928, a photostatic copy of which is attached hereto for reference, according to which said survey
 
 said triangle
 
 measures nineteen hundred sixty feet, three inches and four lines on the west side of Elysian Fields Avenue, eighteen hundred thirty-nine feet, one inch and six
 
 *538
 
 lines on one side and eight hundred forty-two feet and five lines on the other line.” (Italics ours).
 

 Defendant, Henry L. Feraud, refused to purchase the property on the ground that plaintiff did not have a good and merchantable title.
 

 The present suit was then brought by plaintiff to compel defendant to specifically perform his contract. From a judgment in favor of plaintiff compelling specific performance, defendant has appealed.
 

 The photostatic copy of the survey of the triangular tract made by B. J. Oliveire, C. E., May 28, 1928, is designated in the record as exhibit, plaintiff, No. 1. This survey forms the basis for the description in the agreement to purchase made by defendant of this tract, and describes the tract to be purchased accurately in every particular.
 

 The primordial title to the Hopkins Plantation was vested in J. Hopkins (James Hopkins) and consisted of Lot No. 1 and Lot No. 2, or the whole of Section 157, Township 12 South, Range 11 East. In the northwest corner of Section 157 a small triangle of ground extended beyond Elysian Fields Street into Section 189. This triangle forms a part of Lot No. 1 of Section Í57. In the United States Field Notes of Lot No. 1 of Section 157, Township 12 South, Range 11 East, claimed by J. Hopkins (James Hopkins), made by V. Sulakowski, U. S. Deputy Surveyor, November 25, 1871, and surveyed by him in the fall of 1871, it is stated:
 
 “Note:
 
 Lot No. 1 is occupied by P. Berges, with permission of J. Hopkins and used as pasture.”
 

 It is also stated on last page of the Field Notes:
 

 “Section 189 and claimed by J. Hopkins and Alexander Milne and later confirmed to J. Hopkins by an Act of Congress, February 10th, 1897, United States Statutes, Volume 29, Page 517.
 

 “Section 188 claimed by Darcantel and Alexander Milne and later confirmed to Darcantel.”
 

 V. Sulakowski, U. S. Deputy Surveyor, had previously in 1871 included Section 189, the triangular tract, for J. Hopkins (James Hopkins) in his survey of Section 157, Township 12 South, Range 11 East.
 

 See plaintiff, exhibit No. 7, of U. S. Field Notes of Lot 1, Section 157, Township 12 South, Range 11 East. See plaintiff, exhibit No. 12, and testimony of E. L. Eustis, C. E. and Surveyor, Tr., p. 43. See plaintiff, exhibit No. 3, official survey made by Valery Sulakowski, U. S. Deputy Surveyor, showing Lots No. 1 and No. 2, Section 157, and triangle in the northwest corner of Section 157 extending into Section 189, and forming part of Lot No. 1 of Section 157. See also plaintiff, exhibit No. 6, showing that “North-west boundary lines of Hopkins Plantation * * * conform with the D’Hemecourt map of New Orleans.”
 

 Exhibit No. 6 shows triangular tract in dispute.
 

 Mr. E. L. Eustis, C. E. and Surveyor, testified that the D’Hemecourt plan was considered ' official and, according to the D’Hemecourt plan, the Hopkins Plantation coincides1 with the lines on the official map
 
 *540
 
 in Baton Rouge; and that the D’Hemecourt plan was made about the time of the Sulakowski survey, which was made in the fall of 1871. Tr., pp. 42 and 43.
 

 It is therefore certain that the triangular tract, in dispute in this case, and extending from the northwest corner of Section 157 into Section 189, was included in Lot No. 1 of Section 157.
 

 In 1885 the Succession of Charles W. Hopkins, No. 15303 of the Civil District Court for the Parish of Orleans, was the owner of the J. Hopkins (James Hopkins) Plantation. (See plaintiff, exhibit No. 8.) In this succession, proceedings for a partition were instituted and prosecuted to conclusion. The Hopkins Plantation was divided into five tracts, and was ordered by judgment of the Civil District Court to be sold at public auction to effect a partition, resulting in sales by the auctioneer before Octave Morel, late Notary Public for the Parish of Orleans. All of the sales were executed by this notary approximately on the 29th day of July, 1886. (See Succession of Charles W. Hopkins, and testimony of Eustis, Tr. 39.)
 

 Tract No. 1 of the Hopkins Plantation was sold to Charles Deitz by act of sale, passed before Octave Morel, notary public, dated July 29, 1886. C. O. B. 127, folio 79 (exhibit, plaintiff No. 8).
 

 Tract No. 1 in the sale to Deitz was described as follows: “A certain portion of ground, situated in the Third District of this City, making part of a plantation known as ‘Hopkins Plantation’, and designated on a plan made by John P. Braun, Architect, on the 5th May, 1886, a sketch of which plan is thereto annexed for reference, the number 1. Said portion of ground measures sixteen (16) arpents front on the north or left side of Gentilly or the public road, by twenty (20) arpents in depth, more or less, on one side by the Peoples Avenue Canal and on the other side for the most part by Elysian Fields Street.”
 

 On the 26th day of April, 1905, by act before Bernard Titche, late notary public, Charles Deitz sold to plaintiff, Highland Realty Company, Tract No. 1 which he' had acquired, with the following description :
 

 “Said portion of ground measures sixteen (16) arpents front-on the north or left side of Gentilly or the public road, by twenty (20) arpents in depth more or less, bounded on one side by the Peoples Avenue Canal, and on the other side for the most part by Elysian Fields Street, and extending as far back into the woods as the rear line of the tract or plantation may run, if vendor’s title extends that far; together with all the buildings and improvements thereon, and all the rights, ways, servitudes, and appurtenances thereunto belonging.
 

 “Being the same property, neither more nor less, which was acquired by the present vendor by the aforesaid act before Octave Morel, Notary Public, registered C. O. B.. 127, folios 79 and 80.” (See exhibit, plaintiff No. 2.)
 

 In 1908 the Highland Realty Company,, by act before John R. Upton, notary public, sold a portion of the property referred to
 
 *542
 
 in the two preceding acts to John Liuzza. (See exhibit, plaintiff No. 9.)
 

 In the latter act there was an express reservation reading as follows: “The property herein conveyed being all of the property acquired by the Highland Realty Company, as hereinabove stated, which lies east of the said Elysian Fields Avenue,
 
 the present vendor not selling, but expressly retaining in itself the ownership of the triangular portion of ground formerly belonging to the Hopkins Plantation, and lying on the west side of Elysian Fields Avenue, being comprised within the letters ‘F’, ‘G’ and ‘HP on said plan hereto an
 
 nexed(Italics ours.) (See exhibit, plaintiff, 9-A in which the reserved portion of ground is marked out.)
 

 The only contention of defendant which might cloud this title is a reference to a survey of Braun, architect, referred to in the acquisition by Deitz from the Succession of Hopkins, which survey, in showing Tract No. 1 of Hopkins Plantation, does not prolong the lines of the northwest corner forming the triangle in issue.
 

 The Braun plan is manifestly inaccurate. This is true, particularly in view of the fact that the Hopkins Plantation did actually include this property, as clearly shown by the testimony of Mr. Eustis and by every one of the experts herein; by the official D’Hemecourt plan; by the United States Field Notes of Lot No. 1 in Section 157, Township 12 South, Range 11 East, and by the survey and plan of V. Sulakowski, U. S. Deputy Surveyor, made in 1871 and 1872. As Lot No. 1 in Section 157, Township 12 South, Range 11 East, included the triangular tract in dispute, it was not necessary in the transfer to Deitz of Lot No. 1 to specifically mention this particular tract. Lot No. 1 is on the north part of the “Hopkins Plantation,” a well known tract of land, and notwithstanding any inaccuracy in the description of this lot, its identity and boundaries could be established easily by reference to the surveys and field notes affecting this particular lot, and already mentioned in this opinion.
 

 Besides, in the case of Samuels v. Parsons, 146 La. 262, at pages 268 and 269, 83 So. 548, at page 550, the Court says: “By referring to the pleadings, judgment, commission, etc., it will be seen that
 
 the entire property
 
 was ordered sold for the purpose of effecting a partition * * *. Therefore, regardless of what the deed recited,
 
 the entire property
 
 passed * *
 

 (Italics ours.)
 

 The entire property of the Hopkins Succession was ordered sold for the purpose of effecting a partition, and regardless of what the deed to Deitz recited, and regardless of any inaccuracy in the map of Braun, architect, annexed to the deed, Lot No. 1 of the Hopkins Succession,
 
 in its entirety,
 
 passed to Deitz, the purchaser at the
 
 public sale
 
 to effect the partition.
 

 The partition proceedings in the Succession of Charles W. Hopkins, No. 15303 of the Civil District Court for the Parish of Orleans, in which the Hopkins Plantation, divided into five tracts, was sold, evidently constitute a public record. The D’Hemecourt plan or survey of this .property by the City of New Orleans in 1871,
 
 *544
 
 the survey of this property by V. Sulakowski, U. S. Deputy Surveyor in 1871, and the map made by him in 1871 and 1872, including U. S. Field Notes of Lot No. 1 of this property, are also evidently public records.
 

 All of these public records' show, when considered together, that the triangular tract in dispute in this case is a part of Lot No. 1 in the Hopkins Plantation, and that plaintiff’s title to this triangular tract is a good and merchantable title, whether or not it be strictly a record title.
 

 (2)' Besides, the undisputed evidence in this case shows that plaintiff, Highland Realty Company, has been in continuous, open and notorious possession of the entire triangular tract from 1905 to 1939, or more than thirty years, without any adverse claims having been asserted, while plaintiff’s author in title, Charles Deitz, was in the same sort of possession from 1886 to 1905.
 

 ■ Immediately after the Highland Realty Company acquired the property from Charles Deitz, April 26, 1905, that company leased the same to John Melun, who operated a dairy thereon. The entire property was fenced in. (See Mrs. Melun’s testimony, -Tr. pp. 49 and 50.)
 

 Mr. Bertrand I. Cahn, the former City Attorney, was in the office of Mr. Bernard Titche, one of the stockholders of the Highland Realty Company, and visited the property from 1907 through 1939. He knows that the triangular tract here involved was entirely enclosed by a fence. (See testimony of Cahn, Tr. pp. 33 and 34.)
 

 From the date of its acquisition and occupation by plaintiff, Highland Realty Company, no adverse demand has been made by anyone claiming title to the property. (See testimony of Miss E. G. Johnson, Tr. pp. 46, 47; Mr. Bertrand I. Cahn; and Mrs. John Melun.)
 

 The taxes from the date of its acquisition to the present time have been paid by the Highland Realty Company. (See testimony of Miss E. G. Johnson, Tr. pp. 47 and 48, and admission of payment, Tr. p. 48.)
 

 . While there can be no serious contestation as to plaintiff’s prescriptive title under Article 3475 of the Civil Code, plaintiff submits, however, that the triangular tract in question formed the extreme northwest tip of the original Hopkins Plantation; that when that plantation was sold to effect a partition, the property was a part of Tract No. 1, and as such passed to Deitz and to his vendee, the Highland Realty Company, which immediately entered upon possession and remained continuously in possession; that the careless description of the property is overcome by the intention to sell to effect a partition, necessarily implying a sale of all the property. Whether or not the title may be called strictly a record title, it is shown by plaintiff to be a good and merchantable title, independently of the prescriptive title of 30 years under Article 3475 of the Revised Civil Code, which was pleaded by plaintiff only in the alternative.
 

 Judgment affirmed.